## THOMAS J. MOLLOY & CO., Inc., v. BERKSHIRE et al.

### No. 13.

Circuit Court of Appeals, Second Circuit.

June 5, 1944.

Brower, Brill & Tompkins and Alfred D. Van Buren, both of New York City (Walter Brower and Norman Kaliski, both of New York City, of counsel), for petitioner.

Robert L. Wright and William R. Watkins, Sp. Assts. to Atty. Gen., Tom C. Clark, Asst. Atty. Gen., and Arthur A. Alexander, Senior Atty., Alcohol Tax

Division, Office of Chief Counsel of Bureau of Internal Revenue, of Washington, D. C. (Robert L. Wright, of Washington, D. C., of counsel), for respondents.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner, Thomas J. Molloy & Co., Inc., brings this proceeding under Section 4(h) of the Federal Alcohol Administration Act, 49 Stat. 977, 27 U.S.C.A. § 204(h), to set aside an order of the District Supervisor annulling the petitioner's wholesale liquor dealer's basic permit, and to set aside an order of the Deputy Commissioner of Internal Revenue affirming the order of the District Supervisor with certain modifications, on the ground that petitioner's permit was procured by fraud, misrepresentation and concealment of material facts.

Section 4(a) provides that:

"The following persons shall, on application therefor, be entitled to a basic permit:

"(1) Any person who, on May 25, 1935, held a basic permit as distiller, rectifier, wine producer, or importer issued by an agency of the Federal Government.

"(2) Any other person unless the Secretary of the Treasury finds (A) that such person (or in case of a corporation, any of its officers, directors, or principal stockholders) has, within five years prior to date of application, been convicted of a felony under Federal or State law or has, within three years prior to date of application, been convicted of a misdemeanor under any Federal law relating to liquor, including the taxation thereof; or (B) that such person is, by reason of his business experience, financial standing, or trade connections, not likely to commence operations within a reasonable period or to maintain such operations in conformity with Federal law; * * *."

Section 4(c) provides that the Secretary of the Treasury shall prescribe the form of all applications for basic permits, including the facts to be set forth therein, and shall require to the extent deemed necessary for efficient administration separate applications and permits with respect to spirits, wine and malt beverages and the various classes thereof and with respect to the various classes of persons entitled to permits.

The order of the District Supervisor which annulled the wholesale basic permit of the petitioner was made in a proceeding instituted under Section 4, subdivision (e) (3) of the Federal Alcohol Administration Act, 49 Stat. 977, 27 U.S.C.A. § 204(e) (3). That subdivision provides that: "A basic permit shall by order of the Secretary of the Treasury, after due notice and opportunity for hearing of the permittee * * * (3) be annulled if the Secretary finds that the permit was procured through fraud, or misrepresentation, or concealment of material fact. The order shall state the findings which are the basis for the order."

In the case at bar the petitioner makes two major contentions. The first contention is that, irrespective of whether the wholesale liquor dealer's basic permit was procured by fraud, misrepresentation or concealment, that permit was nevertheless properly issued to the petitioner because it already held a valid importer's basic permit which, by reason of the provisions of Section 4(a) (1) of the Federal Alcohol Administration Act, entitled it as a matter of right to the wholesaler's permit without any further showing; the second contention is that there was no fraud or concealment whereby the wholesale permit was procured.

We can see no support for the first contention. At the outset the petitioner is confronted with Section 3(b) of Article II of Regulation No. 1 relating to the issuance of basic permits which provides as follows: "Any person, who on May 25, 1935, held a basic permit issued by the Federal Alcohol Control Administration, authorizing him to engage in business as a distiller, rectifier, wine producer, or importer, shall be entitled upon application therefor to a basic permit as distiller, rectifier, wine producer, or importer, respectively, conforming to the act and these regulations."

It is apparent from this reasonable regulation, which directly conformed in language to the provision of Section 4(a) (1) of the Act, that persons holding basic permits of certain specified types on May 25, 1935, might obtain new basic permits of the same class. That this kind of renewal permit was not intended to cover applicants for wholesalers' permits because wholesalers at that time held only temporary basic permits, issued without sufficient investigation, is evident from the report of the Ways and Means Committee of the

House of Representatives which read as follows:

"All persons who held a basic permit issued under the code system and in full force and effect at the time of the termination of that system as a result of the decision in the Schechter case, Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, are, under the bill, entitled as a matter of right to permits issued under the new law when enacted, except in the case of wholesalers [Sec. 4(a) (1)]. Wholesalers held only temporary basic permits at the time of the termination of the code system. The temporary basic permits were issued without the usual investigation. The other permittees under the code system were issued permits after they demonstrated that they did not have records as law violators and that by reason of their previous experience, financial standing, and trade connections they were potential legal members of the industry [H. Rept. 1542, Federal Alcohol Control Bill, July 17, 1935, p. 8]."

In dealing with the requirements of Section 4(a) (2) of the Act the report of the Ways and Means Committee of the House further stated:

"Under the bill, wholesalers and new applicants are entitled to permits, unless the Administrator after notice and hearing makes certain specific findings [sec. 4(a) (2)]. Thus, in order to deny an application, the Administrator must find that the applicant, within 5 years prior to his application, has been convicted of a felony under Federal or State law, or that the applicant is, by reason of his business experience, financial standing, or trade connections, not likely to commence operations within a reasonable period or to maintain such operations in conformity with Federal law, or that the operations proposed to be conducted under the permit are in violation of the laws of the State in which they are to take place.

"These requirements are designed to exclude from the industries persons who would be likely to violate the provisions of the bill and other Federal or State laws. Such requirements are, in the judgment of the committee, fair and reasonable, and bear a real and substantial relation to the adequate enforcement of provisions of Federal law heretofore enacted or acted in the accompanying bill [H. Rept. No. 1542, Federal Alcohol Control Bill, p. 8]."

In addition to this, it was reasonable for the Department to require information for a permit for doing a wholesale liquor business other than that which it had originally required for distilling, rectifying, wine producing or importing. Moreover the statute provided in Section 4(a) (2) that permits should be issued to persons "other" than those holding permits on May 25, 1935, as distillers, rectifiers, wine producers or importers, only in case they were found by the Secretary of the Treasury to meet certain specified standards. The ability to satisfy those standards, and not the possession of a prior permit as a distiller, rectifier, wine producer or importer, was, therefore, a necessary condition under which a basic permit as wholesaler could be obtained.

The petitioner, when applying for its basic permit as a wholesaler, evidently interpreted Section 4(a) in the way we have indicated, for its application contained no representation that it had held a basic permit on May 25, 1935, and only represented that it would "operate in conformity with the Federal Alcohol Administration Act and amendments thereto, the Twenty-first Amendment and laws relating to the enforcement thereof, with all other Federal and State laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto, and all applicable regulations promulgated by the Federal Alcohol Administration".

The petitioner's second contention that there was no substantial evidence that the permit was procured through fraud, misrepresentation or concealment of material facts was properly overruled in findings which are fully supported by the record.

Section 4(c) provides that: "The Secretary of the Treasury shall prescribe the manner and form of all applications for basic permits (including the facts to be set forth therein) * * *." In accordance with this provision the Federal Alcohol Administration issued instructions to applicants for wholesalers' basic permits which required an applicant, if a corporation, to furnish an affidavit of "the amount of authorized capital, the amount of paid-in capital, and the names and addresses of the directors, officers, and all stockholders who hold, or have subscribed for ten per cent or more of the capital stock." The instructions also required a statement of

whether the applicant was a successor or under substantially the same control or is financed by substantially the same interests as any other business unit at any time connected with the manufacture, rectification, importation, warehousing, bottling, distribution or industrial use of alcohol or alcoholic beverages. The instructions also required a statement by the applicant of the source of the funds invested in the business, the names and addresses of all persons who held or who are expected to hold a substantial financial interest in the enterprise, and the amount of their interests.

In reply to the foregoing questionnaire the petitioner furnished an affidavit giving Thomas J. Molloy, Frank Zagarino, Samuel W. Rappaport and Alexander Goldberg as officers and directors, and also listing Molloy, Bomzon, Zagarino, Weinberger and Abraham and Joseph Essenfeld as stockholders. Subsequently, on a request for further information by the Administration, it furnished a supplemental affidavit stating the business history of Molloy, Rappaport, Goldberg, Bomzon and Weinberger, in which Rappaport was described as the owner and operator of a bakery from 1922 to 1933, and thereafter an officer of the Leonard Gordon Importation Co., wholesalers and importers of alcoholic beverages; that Goldberg from 1919 to 1933 was in the real estate business and that Weinberger was also in the real estate business from 1923 to 1933. It was a fair inference from the testimony that the applicant, by listing Molloy, who had a good reputation in a liquor business which he had conducted prior to the enactment of the prohibition law, and Bomzon who was president of a New York bank, as substantial investors in the petitioner-corporation was attempting to offset the "bootlegging" activities which Zagarino, Rappaport, Goldberg and Weinberger had been engaged in during prohibition years. There was evidence that Molloy was only president of the petitioner in name, never put any money into the corporation, obtained his stock from Zagarino for the use of his name, and finally returned the certificate to the latter; that Bomzon obtained his stock through money furnished by Rappaport, held it only as the nominee of Rappaport, and finally turned back the certificate to him. There was also proof that Rappaport was not the owner or operator of a bakery and that Goldberg and Weinberger were not in the real estate business during prohibition days but that Rappaport, Goldberg and Weinberger were all active in those times in illicit liquor traffic.

We feel no doubt that the Hearing Officer had ample justification for saying that: "The concealments and misrepresentations were material. They were intended to mislead the Federal Alcohol Administration into issuing the permit without a disclosure of the bootleg background of the principals and the bootleg money in the company. The Administrator had a right to know whether he was dealing with a person who had been a bootlegger or a banker, whether the bootlegger or banker was actually the principal stockholder of the company, whether the President of the company, a man of unquestioned good reputation was merely a front for people who had been bootleggers, and whether the business of the principals had been real estate or baking according to information furnished at the request of the Administrator after the original papers filed failed to give such information on bootlegging as was the fact."

We are referred to the dissenting opinion of Judge Hutcheson in Atlanta Beer Distributing Co., Inc. v. Alexander, 5 Cir., 93 F.2d 11, 13, which took the view that even convictions of the president of a corporation, applying for a permit, of prior violations of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., were insufficient to justify withholding the permit on the ground that the applicant by reason of its business experience and trade connections was not likely to operate in conformity with Federal law. The majority of the court, consisting of Judges Sibley and Holmes, affirmed the action of the Administrator, and with all deference we do not differ with their decision.

■ Finally the petitioner attacks the licensing act on the ground that as applied to itself the Act is invalid because such a very large proportion of petitioner's merchandise is purchased from orders placed within the State of New York and sold within that State. If the argument presented were sound, which we do not suggest, it has no relevancy in the present case. If the Act is unconstitutional as applied to the petitioner, it should have asked for no permit and cannot object to having its license annulled.

For the foregoing reasons the petition is denied and the order of the Deputy Commissioner is affirmed.