**MID–VALLEY DISTILLING CORPORATION v. DE CARLO.**

No. 9232.

Circuit Court of Appeals, Third Circuit.
Argued March 3, 1947.
Decided April 29, 1947.

David Berger, of Philadelphia, Pa., for petitioner.

Herbert Borkland, Sp. Asst. to Atty. Gen., for respondent.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

On and prior to May 29, 1945 the petitioner, Mid-Valley Distilling Corporation, a Pennsylvania corporation, held certain basic permits authorizing it to engage in the distilling, warehousing, rectifying, wholesaling and importing of liquors. On that day all of Mid-Valley's outstanding capital stock was acquired by Distillers Factors Corporation. Notice of this transfer was given by Mid-Valley to the Supervisor, Alcohol Tax Unit, District No. 3, and within 30 days applications for new basic permits were filed by Mid-Valley with the Alcohol Tax Unit which acknowledged their receipt. On August 30, 1946 all of Mid-Valley's stock was transferred to Rescom Import Company, Inc. Notice of this transfer was given by Mid-Valley to the Alcohol Tax Unit. Receipt of this communication was acknowledged by the District Supervisor by a letter dated September 4, 1946.[1] In this letter the Supervisor called Mid-Valley's attention to Section 5, Article II, Regulations 1, 27 C.F.R. § 1.24 (c), quoted hereinafter.

Thereafter, on September 16, 1946, the Acting Supervisor,[2] the respondent, wrote a letter to Mid-Valley in which he stated in part, "Since operations may not be conducted under a basic permit issued under the Federal Alcohol Administration Act and regulations which has been transferred

[1] The letter of September 4, 1946 is as follows:

"Mid-Valley Distilling Corp * * * Gentlemen:

"Receipt is acknowledged of your letter of August 30, 1946 advising that 100% of the authorized stock of the Mid-Valley Distilling Corporation was sold and transferred to the Rescom Import Company, Inc., of 24 Commerce Street, Newark 2, New Jersey, as of August 30, 1946. * * *

"In this connection your attention is directed to the provisions of Section 5, Article II, Regulations 1, which is quoted in the attached list of excerpts from said regulations. Accordingly, you are advised to file applications for new Distiller's Rectifier's, Importer's and Wholesaler's, and Warehousing and Bottling basic permits within the 30-day period stipulated in the regulations. The necessary Forms 1630, 1632, 1637, 1639 and 1641 are enclosed. * * *"

[2] In order to understand the authority of the Supervisor, we will briefly outline the changes in the administrative provisions of the Federal Alcohol Administration Act of August 29, 1935, 49 Stat. 977, 27 U.S.C.A. § 201 et seq. The Federal Alcohol Administration was created as a division of the Treasury Department, headed by an Administrator. Pursuant to the provisions of the Reorganization Act of 1939, 53 Stat. 561; Section 4 of the Joint Resolution of June 4, 1940, 54 Stat. 230, 231, 5 U.S.C.A. § 133u; Section 2 of Reorganization Plan III, effective June 30, 1940, 54 Stat. 1231, 5 U.S.C.A. note under § 133t, the Federal Alcohol Administration and the office of Administrator were abolished and all functions administered by the Secretary of the Treasury through the Bureau of Internal Revenue. The Secretary of the Treasury, by Order No. 30, effective June 30, 1940, 26 C.F.R. Cum.Supp. § 171.1a, established the Alcohol Tax Unit in the Bureau of Internal Revenue which was under the direction of an Assistant Deputy Commissioner. The Deputy Commissioner of Internal Revenue was in charge

from a permittee to a transferee and subsequently from a transferee to a subsequent transferee, * * * [your] permits terminated automatically as of the date of the occurrence of the change in ownership."[3] Other portions of the letter required Mid-Valley to cease operations at times specified. Mid-Valley's operations were actually terminated because of the Supervisor's action a few days later. On September 19, 1946 Mid-Valley petitioned this court to set aside the Supervisor's "order of revocation", allegedly constituted by his letter of September 16, 1946. On September 23, 1946, within the 30 day period, Mid-Valley again filed applications for new basic permits. On September 24, 1946 the Supervisor granted interim relief to Mid-Valley which resumed its operations.

Section 4(g) of the Federal Alcohol Administration Act as amended, 27 U.S.C.A. § 204(g), provides, "A basic permit shall continue in effect until suspended, revoked, or annulled as provided herein or voluntarily surrendered; except that (1) if leased, sold, or otherwise voluntarily transferred, the permit shall be automatically terminated thereupon, and (2) if transferred by operation of law or if actual or legal control of the permittee is acquired, directly or indirectly, whether by stock-ownership or in any other manner, by any

of the Unit under the general direction and supervision of the Commissioner of Internal Revenue and the Secretary of the Treasury; he delegated, supra § 171.-4a, all functions of the Federal Alcohol Administration, its offices, and the office of the Administrator to the Deputy Commissioner of the Bureau of Internal Revenue in charge of the Alcohol Tax Unit, under the direction and supervision of the Commissioner of Internal Revenue and the Secretary of the Treasury through the Basic Permit and Trade Practice Division; and on July 9, 1940, supra § 171.4c, delegated functions to District Supervisors as follows: "The power and duty heretofore vested in the Deputy Commissioner of the Bureau of Internal Revenue in charge of the Alcohol Tax Unit, by § 171.4a, to issue, amend, deny, revoke, suspend and annul basic permits under the provisions of the Federal Alcohol Administration Act, shall continue to be exercised by him, and are also hereby delegated to District Supervisors of the Alcohol Tax Unit, to be exercised by them, subject to the supervision and direction of the said Deputy Commissioner."

3 The letter of September 16, 1946 is as follows:

"Mid-Valley Distilling Corporation * * * Gentlemen:

"Further reference is made to your letter of August 30, 1946, advising of the change in the ownership of stock of your company which was transferred as of August 30, 1946, from the Distillers Factors Corporation to the Roscom Import Co., Inc.

"Since operations may not be conducted under a basic permit issued under the Federal Alcohol Administration Act and regulations which has been transferred from a permittee to a transferee and subsequently from a transferee to a subsequent transferee, the following permits terminated automatically as of the date of the occurrence of the change in ownership:

"Distillers—D-603—dated January 15, 1941

"Warehousing and Bottling—3-BD-5, dated August 27, 1940, and amended as of June 4, 1946

"Rectifier—R-765, dated February 4, 1944

"Warehousing and Bottling—3-BR-7, dated February 4, 1944

"Wholesaler—3-P-379, dated February 5, 1944

"Importer, 3-I-34, dated January 1, 1944

"Accordingly, operations under the authority of the above basic permits must be discontinued. Consequently your Registered Distillery No. 16, Internal Revenue Bonded Warehouse No. 16, and Rectifying Plant No. 43 are no longer in a qualified status.

"With respect to distillery operations, no additional mashing will be permitted. However, any mash already set may be fermented and distilled and all spirits finished and removed from the cistern room. Promptly thereafter notice of suspension, Form 124, must be filed and the distillery will be locked in accordance with the provisions of Section 183.363 of Regulations 4.

"Warehouse operations will similarly be discontinued with the provision that work may be completed on any spirits for which Forms 179 have been filed and the spirits taxpaid and removed from the warehouse.

"Operations at your rectifying plant must also be discontinued but there will be no objection to completion of any rectification and bottling of any spirits now in process. * * *"

person, then such permit shall be automatically terminated at the expiration of thirty days thereafter: Provided, That if within such thirty-day period application for a new basic permit is made by the transferee or permittee, respectively, then the outstanding basic permit shall continue in effect until such application is finally acted on by the Secretary of the Treasury."

Regulations No. 1, Article II, Section 5, paragraph (c), 27 C.F.R. 1.24(c), relating to the duration of basic permits under the Federal Alcohol Administration Act is as follows: "If any basic permit is transferred by operation of law or if actual or legal control of the permittee is acquired, directly or indirectly, whether by stock ownership or in any other manner, by any person, then such permit shall be automatically terminated at the expiration of 30 days thereafter: Provided, That if within such 30-day period application for a new basic permit is made by the transferee or permittee, respectively, then the outstanding basic permit shall continue in effect until such time as the application is finally acted upon by the Administrator."

The Supervisor contends (1) that his letter of September 16, 1946 merely informed Mid-Valley of the "automatic termination" of its basic permits and is not an order, and (2) that if it is an order it is not appealable to this court.[4] Upon the main issue the Supervisor takes the position that under subparagraph (g) of the Act and the regulations quoted Mid-Valley's licenses terminated automatically upon the second transfer of its capital stock, viz., that transfer which took place on August 30, 1946 to Rescom Import Company, Inc. Mid-Valley contends to the contrary. We think it is apparent that if the permits automatically terminated by reason of the second transfer of the stock of Mid-Valley, the letter of September 16 is not an order. If, on the other hand, the permits did not terminate automatically under the statute and the applicable regulation by virtue of the second transfer of Mid-Valley's capital stock, the contents of the letter of September 16 and the actions of the Supervisor, resulting in the cessation of Mid-Valley's activities, constituted an order of "suspension, revocation or annulment". If it was such, was it subject to judicial review? If the permits did not terminate automatically, the Supervisor will have to proceed as required by subsection (e) of the Act to revoke, suspend or annul them.

Turning now to the provisions of subsection (g) it is obvious that in the case at bar the permits were not leased, sold or otherwise voluntarily transferred by operation of law or otherwise for, if they be valid and subsisting, it is indubitable that they are still in the possession of Mid-Valley. It is clear that the provisions of clause (2) of the subsection are applicable since, under the circumstances, in the words of the statute, "legal control of the permittee" was "acquired" by the transfer of stock ownership. The Supervisor, therefore, bases his argument upon two points. First he contends that subsection (g) must be construed with reference to the purpose and intent of Congress to exclude undesirable persons from holding permits, citing the legislative history of the Act and decisions of this and other courts. See the Report of the House Commitee on Ways and Means, Report No. 1542, 74th Cong., 1st Sess., p. 9;[5] and the Report of the Senate Committee on Finance, Report No. 1215, 74th

---

[4] The Supervisor made a motion to dismiss based on items "(1)" and "(2)", supra. This motion was set down for argument and was denied. It was renewed by the Supervisor at the direction of the court upon the argument of the case in chief. Therefore we deal with these contentions in this opinion.

[5] As follows: "The bill prohibits the lease, sale, or other voluntary transfer of any permit (sec. 4(h)). This prohibition does not, however, prohibit the sale or other transfer of the assets of a permittee. A distiller, for instance, may sell his distillery but not his permit. The purchaser in such case is required to obtain a new permit. In order to provide continuity of operation of the business, in case of a sale, it lies within the power of the parties to condition the transfer of title upon the prospective purchaser's obtaining a new permit. For the purpose of caring for situations that arise through transfers by operation of law or through acquisition, for instance, of control of an existing permittee by acquisition of its stock, provision is made for the continuance of the old permit, but

Cong., 1st Sess. See also Feitler v. United States, 3 Cir., 34 F.2d 30, 33; Billik v. Berkshire, 2 Cir., 154 F.2d 493, the dissenting opinion of Clark, J., in the case last cited, and the dissenting opinion of Maris, J., in Trenton Beverage Co. v. Berkshire, 3 Cir., 151 F.2d 227, at page 231. The general intent of Congress must be conceded but the language quoted from congressional reports and from the cases cited is not of substantial assistance to the respondent in the case at bar or to this court.

We may concede also that it is the purpose of subsection (g) to implement Sections 3 and 4(a) and (b) of the Act and to prevent a person whose character, reputation and plans have not been subjected to the scrutiny of the Supervisor from obtaining a permit. It was also the intention of Congress to prevent a person, unable to qualify for a permit under Section 4, to obtain one indirectly from a corporation already possessed of one, and to use it effectively. The congressional intent, however, would not necessarily be frustrated by allowing the permit to remain outstanding while two or more transfers of the capital stock of the permittee were effected; nor would the intent of Congress necessarily be aided by allowing the permit to remain outstanding if only one transfer of capital stock was made. If only one transfer of the capital stock of the permittee is effected, the transferee may just as well be a person unqualified to obtain a permit as if he were the second or third transferee. The first transferee may in fact be not as well qualified or desirable as the second or third transferee. The respondent, however, visualizes the possibility that the undesirable person may retain the benefits of a permit by effecting repeated transfers of the stock of the permittee, each new transfer accompanied by an application for a new basic permit made within the 30-day period, each new transfer of the stock being consummated and each new application being filed before the Supervisor has the opportunity to act on any application. The effect of this, says the Supervisor, would be to permit a basic permit to remain valid for an indefinite length of time in undesirable hands.

We think this fear is illusory, particularly in view of the provisions of subsections (a) (2), (d), (e) and (g) of Section 4 of the Act, for it would appear that a new basic permit could be refused by reason of the provisions of subsection (a) (2) to any person unlikely to maintain his operations "in conformity with Federal law", while the District Supervisor could proceed promptly to deny any pending application for a new basic permit. The execution of a series of transfers of the capital stock of a permittee to avoid the impact of the provisions of subsection (g) would be a sham which district supervisors and courts of the United States would disregard and every such transfer would be void as against the public policy declared by the statute. It should be pointed out also that there is no suggestion in the case at bar, or anything in the record, which would indicate that Rescom Import Company, Inc., is a person to whom a permit should be refused under the provisions of Section 4(a) (2).

Finally, however, the respondent rests his case on the words employed in Section 4(g). He lays particular emphasis on the fact that Congress spoke of application for a new basic permit as one to be made "by the [6] transferee or permittee, respectively". He insists that a literal construction of this language requires the conclusion that "only two persons" are referred to in subsection (g), viz., the person in control of the permittee when the permit was issued and that person to whom control was transferred subsequently. He contends that if any further exception, viz., one in favor of a second or subsequent transferee, had been intended by Congress the critical words would have been "a transferee or permittee" or "the transferees or permittee."

only for a limited time, pending application for a new permit and action by the Administrator thereon. This, the committee believes, is necessary in order to prevent the permits from falling into the hands of bootleggers and other law violators who would not have been entitled to a permit in the first instance."

[6] Emphasis added.

■ Such a construction is indeed a possible one but it seems to us to find little support in the statute and the regulation and to depend largely on the use of the word "the" instead of the word "a" and the fact that the word "transferee" is in the singular. We think that the respondent's position in this respect is untenable. If the respondent's interpretation were a correct one, we conceive that it would have been covered by explicit language in the regulation since the construction is one which does not readily suggest itself on reading subsection (g). It must also be pointed out that a careful study of the administration of alcohol was made by the House Ways and Means Committee and by the Senate Finance Committee as appears from the committee reports referred to in this opinion and there is nothing in the legislative history of the statute to indicate that any substantial problem had arisen in respect to successive transfers of basic permits. Had such a problem been before Congress or before its committees surely there would have been some reference to it in the history of the legislation and we may assume that apt words would have been employed by Congress to have limited transfers of capital stock of a permittee to a single instance. Indeed the entire reach of the statute, the congressional reports and the comments thereon made by members of Congress lead us to the conclusion that it was the intention of Congress that nothing in the Act should militate against "the honest business man who is trying to conduct his business in a fair and reasonable manner." [7] See also the provisions for revocation, suspension and annulment in subsection (e) and those of subsection (b) requiring hearing.

■ We conclude that the permits did not terminate automatically by reason of the transfer of Mid-Valley's capital stock from Distillers Factors Corporation to Rescom Import Company, Inc., viz., by that successive transfer. It follows that the Supervisor's letter of September 16 constituted as a matter of law an order of "suspension, revocation or annulment". Since it was such an order it was subject to judicial review.[8] Cf. Strauss v. Berkshire, 8 Cir., 132 F.2d 530, and Thomas J. Molloy & Co. v. Berkshire, 2 Cir., 143 F.2d 218.

We would have reached this conclusion even if the petitioner were not entitled to plead the benefits of the Administrative Procedure Act of June 11, 1946, 5 U.S.C.A. § 1001 et seq. Our view that the Supervisor's letter of September 16 was an order subject to judicial review is buttressed by the provisions of Section 2(d) of the Administrative Procedure Act for the contents of the letter must be deemed to be a final disposition by the Alcohol Tax Unit in a "matter other than rule making but including licensing". See also Section 2(e) of that Act which provides that "* * * 'Licensing' includes agency process respecting the grant, renewal, denial, revocation, suspension, annulment, withdrawal, limitation amendment, modification, or conditioning of a license." We conclude also that the Supervisor's order is reviewable by this court by virtue of the provisions of Section (4)h of the Federal Alcohol Administration Act and not by a district court of the United States as contended by the respondent. The subsection provides in pertinent part that, "An appeal may be taken by the permittee or applicant for a permit from any order of * * * [a District

---

[7] See the remarks of Congressman Cullen, Cong. Rec., 74th Cong., 1st Sess., p. 11714, as follows:

"Adequate court review of action of the Administrator in connection with permits and prohibitions on unfair and unlawful practices is provided for.

"It is believed that this bill will furnish a systematic and carefully conceived basis for proper Federal control of those matters * * *. Finally, no hardship will be imposed on legitimate industry by the bill. Nothing in it is unfair or discriminates against the honest business

man who is trying to conduct his business in a fair and reasonable manner."

[8] Cf. Columbia Broadcasting System v. United States, 316 U.S. 407, 416, 62 S.Ct. 1194, 1200, 86 L.Ed. 1563, wherein Mr. Chief Justice Stone stated that in determining that an action is an "order" for the purposes of judicial review, "The particular label placed upon it by the Commission is not necessarily conclusive, for it is the substance of what the Commission has purported to do and has done which is decisive."

Supervisor [9]] denying an application for, or suspending, revoking, or annulling, a basic permit" and that "Such appeal shall be taken by filing, in the circuit court of appeals of the United States within any circuit wherein such person resides or has his principal place of business, * * * within sixty days after the entry of such order, a written petition praying that the order * * * be modified or set aside in whole or in part."

The legislative history of the Act leaves no doubt as to the correctness of this conclusion for Representative Celler offered an amendment to subsection (h) under which the district courts of the United States would have been vested with exclusive jurisdiction. He was answered by Representative Vinson of Kentucky who stated that "* * * he [Celler] tried to convey the impression that if the circuit court of appeals was on vacation, and the Administrator made a certain ruling, it closed up the business of the permittee." Mr. Vinson then pointed out that the language of the bill provided for commencement of proceedings by petition to a circuit court of appeals which, unless specifically ordered to the contrary by the court to which the petition was filed, would operate as a stay of the Administrator's order. He said further that "We simply save the litigants one step in the judicial procedure, because you know and I know when litigants go into the district court whichever side loses will appeal to the circuit court of appeals, thence to the Supreme Court." [10] It should be pointed out also that the provisions of Section 10 of the Administrative Procedure Act confirm this conclusion. See in particular subsections (a), (b), (c) and (d) thereof.

██ A final procedural point requires discussion. Section 4(h) of the Federal Alcohol Administration Act provides that a copy of a petition to set aside an order suspending, revoking or annulling a basic permit shall be served upon the Secretary of the Treasury "or upon any officer designated by him for that purpose, and thereupon the Secretary shall certify and file in the court a transcript of the record upon which the order complained of was entered." The section goes on to provide that "Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part." The respondent does not contend that service was not made in accordance with the provisions of subsection (h) or that any procedural requirement has been omitted by the petitioner. The respondent's contention goes to the merits as we have indicated for he takes the position that the letter of September 16 is not an order within the purview of Section 4 (c) of the Federal Alcohol Administration Act. Though the respondent has filed a transcript of all the pertinent proceedings before the Alcohol Tax Unit and a certificate designating that record, he has entitled his certificate a "Certificate in Lieu of Certificate of Respondent to Administrative Record." The characterization of the certificate is immaterial and the label given it by the Supervisor is unimportant since the transcript of the record upon which the order of September 16 was made by the Supervisor is filed in this court under the certificate. For this reason we hold that this court has jurisdiction of the appeal.

The order, constituted by the letter of September 16, revoking the petitioner's basic permits, will be set aside since it was entered without notice and hearing as required by the Act.

[9] See note 2 supra.

[10] See Cong. Rec., 74th Cong., 1st Sess., pp. 11790-11792.